

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

September 26, 1963

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. C-149

RE: Whether the Comptroller
of Public Accounts can
legally pay a tax refund
on special fuels or motor
fuels used off the highway
when the quantity so used
is determined by either of
the stated methods.

Dear Mr. Calvert:

In your request for an opinion from this department relative to refunds of tax on motor fuels and special fuels, as defined by statute, you have given us two proposed methods of keeping records of the amount of fuel used for propelling motor vehicles on the public highways and thus rendering same subject to taxation, while at the same time allowing a refund of taxes paid on fuel used for the tax-exempt purpose of operating loading pumps on the trucks, when the trucks and the power take-off for the pumps are powered by the same truck engine which draws fuel from a single tank. The accounting methods proposed are the following:

"1. A complete and accurate record of the miles traveled by each vehicle measured by hub meters or speedometers approved by the Comptroller, and a complete and accurate record of the fuel delivered into the fuel tank or tanks of the vehicle would be kept, from which record the quantity of fuel used taxable on the roads and highways during the month or other taxable period would be computed at one-fourth (1/4) of a gallon for each mile so traveled and the multiple quantity resulting from such computation would be deducted from the total quantities delivered to the vehicle during the period and the remainder of such fuel would be designated as used in such stationary pumping units and a claim for tax refund would be filed for such off-highway use."

"2. Or a complete and accurate record of the miles traveled and fuel delivered to and used by each vehicle would be kept as described in paragraph one, above, and the operator, acting under the direction and supervision of the Comptroller or his representatives, would determine by practicable test runs the miles that each truck, or class of trucks of the same make, weight and horsepower, will travel per gallon of motor fuel and each kind of special fuels used. Such mileage factor or factors would then be used to determine the quantity of fuel used taxable on the roads and highways by each vehicle during the month or other taxable period, which quantity so determined on the mileage basis aforesaid would be deducted from the total quantities delivered to the vehicle during the period and the remainder of such fuel would be designated as used in such stationary pumping units and a claim for tax refund would be filed for such off-highway use."

You then asked the following question:

"Will you, therefore, please advise this department whether it can legally pay a tax refund on special fuels or motor fuels used off the highway when the quantity so used is determined by either of the methods set out in numbered paragraph one or two above."

As your question assumes, the issue of the entitlement of the taxpayer to a refund of taxes paid on fuels used for off-highway purposes is beyond question. The relevant portion of the motor fuel tax refund statute, Article 9.13, Title 122A, Taxation-General, Vernon's Civil Statutes, provides in Section (2) as follows:

"Any person (except as hereinafter provided), who shall use motor fuel for the purpose of operating or propelling any stationary gasoline engine, motor-boat, aircraft, or tractor used for agricultural purposes, or for any other purpose except in a motor vehicle operated or intended to be operated upon the public highways of this State, and who shall have paid the tax imposed upon said motor fuel by this Chapter, either directly or indirectly, shall, when such person has fully complied with all provisions of this Article and the rules and regulations promulgated by the Comptroller, be entitled to reimbursement of the tax paid by him . . ." (Emphasis added.)

The refund statute pertaining to the special fuels tax is equally explicit, providing as follows in Section (1) of Article 10.14 of Title 122A, V.C.S.:

> "Except as otherwise provided by Article 10.15 of this Chapter, any licensed dealer who shall have paid the tax imposed by this Chapter upon any liquified gas or distillate fuel which has been <u>used or sold for use</u> by such dealer <u>for any purpose other than propelling a motor vehicle upon the public highways of this State</u>, . . .<u>and any licensed user</u> who shall have paid said tax upon any liquified gas or distillate fuel <u>which has been used by such user for any purpose other than propelling a motor vehicle upon said public highways, may file a claim for a refund of the tax or taxes so paid</u> . . ." (Emphasis added.)

In the fact situation stated in your opinion request, the fuels are used solely for operating pumps for the loading of products into and out of tank trucks. When used for such purpose, the gasoline truck engine connected to the pumping apparatus is a "stationary gasoline engine", to use the exact words of Section (2) of Article 9.13, above-quoted, and in addition the fuel is being used for a purpose other than to propel a motor vehicle and would be eligible for tax refund on that basis alone. The strict and literal interpretation of the words" . . .use . . . in a motor vehicle . . ." in this statute was rejected by this office in Opinion No. O-2381, dated July 25, 1940, wherein it was demonstrated the legislature clearly intended to impose the tax only upon fuel used on the public highways. Opinion No. O-2381 considered several fact situations involving power equipment connected to truck engines by power take-off devices, including pumps, post-hole diggers and drilling rigs. Although fuel for all these operations was drawn from the same tank used in propelling the vehicle, the opinion held such off-highway use to be eligible for refund.

A truck engine powered by special fuels, used to operate power take-off devices as stated above, is certainly being used for a "purpose other than propelling a motor vehicle upon the public highways" as contemplated by the special fuels tax refund statute, in Section (1) of Article 10.14, quoted above.

Having thus settled the question of the taxpayer's entitlement to refund of the tax, we turn now to your question concerning the methods which may be used to record, report and pay taxes on the fuels used for propelling motor vehicles on the public highways and to keep separate those fuels used for tax exempt purposes. This is a simple matter, at least in theory, when the method approved in Opinion No. WW-1462,

written by this office under date of October 24, 1962, is used, which involves use of two separate fuel tanks, one used to provide fuel for propelling the vehicle over the highways and the other used for operating the power take-off pump for loading the truck cargo. However, as your opinion request recognized, this method requires expensive additional tanks and its accuracy in accounting for the fuel used for the different purposes depends entirely upon the attentiveness of hundreds of truck drivers, who are not concerned with the taxes involved, each of whom must make eight (8) valve switches each time he loads and unloads the tank truck he is driving.

Nowhere does the statute expressly contemplate the fact situation with which we are confronted in this case. It declares in the clearest possible terms that the taxpayer is entitled to his refund, but it does not in this particular instance specify how the accounting shall be made of the fuels used for the separate purposes. Should the taxpayer's refund be denied for lack of an express statutory command that the fuels used for the separate purposes should be accounted for in a particular way? We think not. This is not a case in which it is a practical impossibility to make a satisfactory accounting of the taxable and nontaxable fuels used. To the contrary, your opinion request recognized the desirability of the accounting methods proposed, and, in fact, the method proposed in your numbered paragraph one has been expressly approved by the legislature for use in another instance in which it is necessary to determine the amount of motor fuel used from a common tank for propelling trucks when they are being used at different times and places for both taxable and tax exempt purposes. Thus, the third paragraph of Section (7) of Article 9.13, Title 122A, Taxation-General, V.C.S., provides in part:

> "A claimant may account for any part of refund motor fuel used upon the public highway, and not eligible for tax refund, by one of the following methods: . . . (b) Claimant may, by accurately measuring the mileage any such vehicle, tractor or other conveyance travels upon the public highway, deduct from the refund motor fuel set up in the claim, an amount equal to one fourth (1/4) of a gallon for each mile or fraction of a mile any such motor vehicle, tractor, or other conveyance travels on the public highway during the period of the claim, . . ."

Also, a method of accounting rather similar to the one set forth in your numbered paragraph two, was approved by the legislature for use by certain suppliers and users in Article 10.08, Title 122A, Taxation-General, V.C.S., which reads as follows:

"In the event the tax herein imposed on special fuels imported into this State in the fuel supply tanks of motor vehicles and the tax on special fuels used in motor vehicles owned or operated by licensed supplier or other persons acting as users can be more accurately determined on a mileage basis (that is by determining and using the total number of miles traveled and the total gallons of fuel consumed), or in case it is more practicable to so determine the tax, the Comptroller is hereby authorized to approve and adopt such basis."

Once the legislature has declared the taxpayer's right to a refund, as it has in this case, it becomes the duty of the Comptroller to pay such refund if the taxpayer renders a satisfactory accounting. The Comptroller has ample authority to require sufficient and satisfactory proof of the claim for refund and to promulgate rules and regulations, if necessary, regarding the methods to be used in accounting for the fuels used for various purposes. Sections (1), (2), (3), and (7), of Article 9.13; Article 9.23; Sections (1), (2), and (4) of Article 10.14; and Article 10.21, all in Title 122A, Taxation-General, V.C.S., and Opinion No. WW-1020 of this office dated March 16, 1961.

Article 10.08 and Section (7) of Article 9.13, both quoted above, set forth methods for making exactly the same type of accounting as is required in this case, i.e., an accounting of the amount of fuel used by motor vehicles operating on public highways. In both cases the procedure is to determine the amount of fuel used while operating on public highways, then allow the taxpayer to claim a refund for the balance. Whether the balance of the fuel, that used for purposes other than propelling the motor vehicle over the public highways, is used on private roads or whether it is used to power pumps, posthole diggers, conveyor belts or whatever, the practical problem of making a satisfactory accounting is the same. The problem is to determine the amount of fuel subject to the tax, pure and simple, and the amount of fuel used for other purposes is immaterial. In the absence of a specific statutory directive as to the method to be used, the Comptroller will not err in allowing motor fuels used on the public highways to be accounted for by the method set out in Article 9.13 (7), above-quoted. And, since the use of an accounting method based upon an "average miles per gallon" concept was approved by the legislature in Article 10.08, above-quoted, for use in accounting for special fuels used upon the public highways, we believe it is clearly within the Comptroller's discretion to allow the accounting of special fuels used upon the public highways by the method set out in numbered paragraph two, above.

It may be that either of the proposed methods of accounting is satisfactory for both motor fuels and special fuels, or that other methods of accounting not yet known or contemplated may prove more desirable. In any event, it is clearly the Comptroller's prerogative under the above-referenced statutes to require sufficient and satisfactory proof of the off-highway use and to promulgate rules and regulations concerning accounting methods to be used, not inconsistent with the statutes.

It is, therefore, the opinion of this office that you may legally pay a tax refund on motor fuels based upon an accounting made in accordance with the procedure set forth in numbered paragraph one, above, and that you may legally pay a tax refund to a licensed dealer or to a licensed user on special fuels based upon an accounting made in accordance with the procedure set forth in numbered paragraph two, above, under the facts stated. We do not intend to say by this opinion that these are the only accounting methods which may legally be used; however, in the absence of other statutory directives it is perhaps most desirable that methods be used which are the same as, or closely analogous to, methods adopted by the legislature to account for fuels used on the public highways in other instances when the purpose of the accounting is the same.

In discussion of this matter question has been raised as to whether refund of the special fuels tax is barred, under the facts stated, by the following provisions of Section (3) of Article 10.14, Title 122A, Vernon's Civil Statutes:

"Any dealer or user who shall file claim for refund of the tax on any special fuel which has been delivered into the fuel supply tank of a motor vehicle, or who shall file any invoice in a claim for tax refund upon which any date, figure, signature, or other material information is false or incorrect, shall forfeit his right to the entire amount of the refund claim filed." (Emphasis added.)

The definition of the term "motor vehicle" in Section (5) of Article 10.02, V. C. S., is indicative of the intent of the legislature embodied in Article 10.14 (3), above quoted, for the term is defined as follows:

"'Motor vehicle' means any automobile, truck, pick-up, jeep, station wagon, bus or similar vehicle, propelled by a motor or internal combustion engine upon the public highways; provided, that any tractor, combine, or other vehicle or machine designed primarily for use off the public highways shall be deemed to be

a motor vehicle when propelled or serviced with special fuels for propulsion, upon the public highways."
(Emphasis added.)

A truck, or other vehicle, while devoted to off-highway use is not a "motor vehicle" within the statutory definition. Therefore, it would seem that Article 10.14 (3) is inapplicable to the fact situation presented in your opinion request.

Was it the intent of the legislature to provide by Section (3) of Article 10.14 a prohibition against the refund of the special fuels tax on such fuels once they are delivered into the fuel supply tank of a motor vehicle, assuming for purposes of argument the truck under your facts while devoted to off-highway use is a "motor vehicle?" Section (1) of the same Article (quoted on page 3 herein) is obviously the section by which the legislature intended to declare who should be entitled to refunds, while Section (3) is directed at penalizing those who file invoices for tax refunds upon which signatures, figures, dates, or other information is incorrect. If Section (3) were interpreted as prohibiting the refund once the fuels are delivered into the fuel supply tank of a motor vehicle, it would be directly contrary to and inconsistent with Section (1) wherein it is provided that any licensed dealer or licensed user may claim a refund for special fuels devoted to off-highway use. The statute should, of course, be construed as a whole, not in isolated parts. It is our duty to harmonize the various parts of a statute, whenever possible, keeping in mind the intent of the legislature. We cannot believe the legislature intended in so oblique a manner to prohibit absolutely the refund of taxes on special fuels, once delivered into the fuel supply tank of a motor vehicle, when in other instances (see Article 10.08 quoted above) it permits such refunds for use of the same type fuel under similar circumstances by others. Nor would there be any logic in giving special fuels different tax treatment than motor fuels in this respect. If the trucks in question are "motor vehicles" while devoted to off-highway use, then the legislature must have intended to add after the underlined portion of Section (3), above, "and used to propel said vehicle upon a public highway" or words of similar import, for in no other way can the statute be harmonized and the legislative intent be given meaning and effect.

You mention in your opinion request your departmental interpretation of Article 9.13 (7) as applicable to this case. Section (7) of Article 9.13 applies only to use of motor fuels for highway and non-highway purposes in propelling motor vehicles. It has no application to the use of a motor vehicle as a stationary power plant, as in the case at hand.

Reference is also made in your opinion request to Opinion No. V-1563 of this office, dated December 22, 1952, which you construe as authority prohibiting the Comptroller from promulgating a rule or regulation allowing tax deductions on special fuels used in power units from the same fuel tanks which propel the motor vehicle over the highways. That opinion dealt with the levy of the tax on special fuels when such fuels were delivered into the fuel tanks of motor vehicles. The basic principles stated in Opinion No. V-1563 are still correct. Various provisions of the special fuels tax statute still levy the tax at the point of delivery of the special fuel into the fuel tanks of a motor vehicle, viz, Article 10.03 (4), Article 10.03 (5), Article 10.13 (2), Article 10.13 (3) and Article 10.13 (4). However, since Opinion No. V-1563 was written in 1952, Article 10.14, permitting the refund of special fuels taxes when such fuel is used for any purpose other than propelling a motor vehicle upon the public highways of this State, has been added to the statute. Thus, in most instances the tax is still levied when the special fuel is delivered into the fuel tanks of a motor vehicle, as required by the provisions of Article 10.03 and Article 10.13 cited above, but the taxpayer may yet claim a refund of such taxes if the special fuel so delivered is not used to propel the vehicle upon the public highways, and the allowance of such refund is in no way contrary to the provisions of Articles 10.03 or Article 10.13, nor is it inconsistent with the holding of Opinion No. V-1563.

You also refer to a possible inconsistency in our holding in Opinion No. WW-1280, dated March 23, 1962, which holds that special fuels delivered into the fuel supply tank of a motor vehicle are not subject to tax refunds on the part of such fuel used to operate air conditioners installed on such vehicles. Although we believe some of the reasoning of that opinion is open to question, we are not prepared to overrule its holding. Air conditioning on a motor vehicle is a part of the machinery used while the vehicle is being propelled over the highways to provide for the comfort, safety and convenience of the driver and passengers in the vehicle. As such it is fairly comparable to the automatic transmission, horn, lights, radio, windshield wipers, windshield washers, heater, cigarette lighter and other power accessories in common use today in motor vehicles. Each of these accessories drains a certain amount of power off the engine of the motor vehicle, in one way or another. The vehicle would obtain more mileage without such accessories; therefore, in a sense, the amount of fuel used to operate such accessories is not used to propel the vehicle over the public highways but rather to shift the gears, sound the horn, light the lights, etc. However, the overall purpose of all these accessories is to contribute to the task of propelling the motor vehicle with its cargo over the highway; all are part of a group of separate

pieces of machinery put together for a common purpose. A motor vehicle is not just an engine resting on a frame connected to wheels by a transmission. In this day and age, it includes as a matter of course an automatic electric starter, generator, power brakes, power steering, etc., and we frankly believe the air conditioner is just another accessory on the lengthening list.

## S U M M A R Y

Under the facts stated, the Comptroller may refund motor fuel (gasoline) tax and special fuels (butane, diesel fuel, etc.) tax when such fuels are used for purposes other than propelling motor vehicles over the highway even though the fuel is drawn from the same fuel supply tank as the fuel used for propelling the vehicle over the highway, and the Comptroller may legally authorize in the case of motor fuel taxes, the method of accounting for same set out in numbered paragraph one, above. In the case of special fuels taxes, the Comptroller may pay a tax refund to a licensed dealer or licensed user and may legally authorize the method of accounting for same set out in numbered paragraph two, above.

Very truly yours,

WAGGONER CARR
Attorney General

BY: Ernest Fortenberry
Ernest Fortenberry
Assistant Attorney General

EF:sg


APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. Arthur Sandlin
Bill Allen
Robert Smith
George Gray

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone